KRAYNICK, Appellant, v. INDUSTRIAL COMMISSION and others, Respondents.*

*January 31—February 28, 1967.*

---

* Motion for rehearing denied, without costs, on May 9, 1967.

For the appellant there was a brief and oral argument by *Edward P. Rudolph* of Milwaukee.

For the respondent Industrial Commission the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondents Kraft Foods and Ideal Mutual Insurance Company there was a brief by *Walther &*

*Burns* of Milwaukee, and oral argument by *David L. Walther.*

GORDON, J. The appellant urges us to adopt a judicial presumption that an unexplained fall occurring in the course of employment "arises out of his employment," as that expression is used in sec. 102.03 (1) (e), Stats. The answer to this proposal is contained in *Nielsen v. Industrial Comm.* (1961), 14 Wis. (2d) 112, 118, 109 N. W. (2d) 483, where this court said:

"Human experience does not attest all accidents or a sufficient share of them, occurring on an employer's premises, arise out of the employment as that term has been defined by this court. If such a working tool is to exist in the fact-finding process, then the legislature should create it as some other states have done.

"The second reason why no presumption exists is found in the statute itself. In cases involving traveling employees, sec. 102.03 (1) (f), Stats., creates the presumption, 'Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment.' See *Hansen v. Industrial Comm.* (1951), 258 Wis. 623, 46 N. W. (2d) 754. This statutory presumption applies only to traveling employees."

A related expression is found in *Rick v. Industrial Comm.* (1954), 266 Wis. 460, 465, 63 N. W. (2d) 712, where we stated:

"The fact that the presumption was created expressly for travelers would seem to negate the recognition of a general presumption that unwitnessed death arises out of employment."

If a presumption such as the appellant proposes is to be adopted, it is clear under the *Nielsen Case* and the *Rick Case* that it is the legislature which must create it. Indeed, we have often held that the burden of proving all the facts essential to recovery in a workmen's compensation case rests on the applicant. *Conley v. Industrial Comm.* (1966), 30 Wis. (2d) 71, 85, 86, 140

N. W. (2d) 210; *Van Valin v. Industrial Comm.* (1962), 15 Wis. (2d) 362, 364, 112 N. W. (2d) 920; *Fitz v. Industrial Comm.* (1960), 10 Wis. (2d) 202, 102 N. W. (2d) 93; *Johnston v. Industrial Comm.* (1958), 3 Wis. (2d) 173, 87 N. W. (2d) 822.

The commission found that Mr. Kraynick's death did not arise out of his employment and that the applicant had failed to prove the cause of the fall. Upon review, we must determine whether credible evidence or reasonable inferences exist which sustain the findings of the commission. *Grant County Service Bureau v. Industrial Comm.* (1964), 25 Wis. (2d) 579, 582, 131 N. W. (2d) 293. When facts are undisputed, the finding of the commission is conclusive even though more than one inference can reasonably be drawn. *Stommel v. Industrial Comm.* (1962), 15 Wis. (2d) 368, 372, 112 N. W. (2d) 904; *Van Roy v. Industrial Comm.* (1958), 5 Wis. (2d) 416, 425, 92 N. W. (2d) 818; *Schmidlkofer v. Industrial Comm.* (1953), 265 Wis. 535, 61 N. W. (2d) 862.

Mr. Kraynick was performing services incidental to his employment at the time of his fall. Nevertheless, upon the facts and circumstances presented in this case, the applicant is required to prove that the cause of the fall was not solely idiopathic in nature. *Cmelak v. Industrial Comm.* (1965), 27 Wis. (2d) 552, 556, 135 N. W. (2d) 304. We believe that the trial court was correct in its determination that the fall was due to idiopathic rather than industrial causes. Although the industrial commission did not make this specific finding, the record fully supports the interpretation adopted by the circuit court.

We have considered the testimony of both Dr. Monroe and Dr. Kagen and do not believe that their evidence barred (1) the commission from finding that the applicant had failed to prove the cause of the fall or (2) the circuit court from concluding that the cause of the fall

was idiopathic. Mr. Kraynick's previous medical record includes head injuries, cirrhosis, jaundice, and alcoholism, as well as some history of blackouts. With that medical background and upon all the facts of this case, the commission was not required to find that the fall arose out of the employment. There is applicable the language of this court in *Peterson v. Industrial Comm.* (1955), 269 Wis. 44, 49, 68 N. W. (2d) 538, where we said:

"The fall was not, in the strict sense of the word, *'unexplained'* because the previous head injury and resulting severe headaches provided as logical an explanation to account for the fall as would the employment in which the employee was engaged at the time of the fall."

The appellant also contends that the hard tile floor on which her husband fell was a zone of special danger. When an employee's work requires him to be in a hazardous situation, an injury which he sustains may be said to arise out of his employment. This is sometimes referred to as the "positional-risk doctrine." *Volunteers of America v. Industrial Comm.* (1966), 30 Wis. (2d) 607, 612, 613, 141 N. W. (2d) 890. See Workmen's Compensation—Unexplained and Idiopathic Falls as "arising out of" the Employment, 1962 Wisconsin Law Review, 532, 539. The hardness of the floor, according to Mrs. Kraynick, increased the hazard which her husband encountered in his work. Support for her argument is found in the testimony of Dr. Kagen:

"I think that the harder the surface he falls on, the more severe the injury; and I think if you have a cork or wooden floor—you can suffer a severe injury on a wooden floor, but you are not as apt to with a—as with a hard ceramic tile floor."

This court has held a concrete stairway to create a zone of special danger. *Cutler-Hammer, Inc., v. Industrial Comm.* (1958), 5 Wis. (2d) 247, 92 N. W. (2d) 824.

A similar holding has applied the positional-risk doctrine to a situation in which the employee was required to be in a canoe on the water. *Volunteers of America v. Industrial Comm., supra.* See also *American Motors Corp. v. Industrial Comm.* (1957), 1 Wis. (2d) 261, 83 N. W. (2d) 714. However, we have held that a level surface is not an area of special danger. *Peterson v. Industrial Comm., supra.*

There are numerous cases in other jurisdictions which have also denied compensation for idiopathic falls on level floors. *Borden Foods Co. v. Dorsey* (1965), 112 Ga. App. 838, 146 S. E. (2d) 532; *Prince v. Industrial Comm.* (1959), 15 Ill. (2d) 607, 155 N. E. (2d) 552; *Riley v. Oxford Paper Co.* (1954), 149 Me. 418, 103 Atl. (2d) 111; *Sears, Roebuck & Co. v. Industrial Comm.* (1950), 69 Ariz. 320, 213 Pac. (2d) 672. But cf. *George v. Great Eastern Food Products, Inc.* (1965), 44 N. J. 44, 207 Atl. (2d) 161; *General Ins. Corp. v. Wickersham* (Tex. Civ. App. 1951), 235 S. W. (2d) 215.

The South Carolina supreme court covered the argument well in its decision in *Bagwell v. Ernest Burwell, Inc.* (1955), 227 S. C. 444, 454, 88 S. E. (2d) 611:

"We are not prepared to accept the contention that, in the absence of special condition or circumstance, a level floor in a place of employment is a hazard. Cement floors or other hard floors are as common outside industry as within it. The floor in the instant case did not create a hazard which would not be encountered on a sidewalk or street or in a home where a hard surface of the ground or a hard floor existed."

Mrs. Kraynick's counsel also suggests that in addition to the hardness of the surface there was a zone of special danger created by the fact that the area was cluttered with a table and a raised pallet platform. The photographs in evidence in this case contradict the suggestion that those physical objects made the area hazardous.

*By the Court.*—Judgment affirmed.